**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

LINDA M. BIDDLE,                        )     No. ED CV 04-1433-PLA
                                        )
                   Plaintiff,           )
                                        )     **MEMORANDUM OPINION AND ORDER**
          v.                            )
                                        )
JO ANNE B. BARNHART,                    )
COMMISSIONER OF SOCIAL                  )
SECURITY ADMINISTRATION,                )
                                        )
                   Defendant.           )
_____ )

**I.**

**PROCEEDINGS**

      Plaintiff filed this action on November 24, 2004, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on December 27, 2004.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on August 1, 2005, that addresses their positions concerning the disputed issue in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on February 25, 1950. [Administrative Record ("AR") at 56.] Plaintiff has one year of college education and past work experience as a receptionist. [AR at 71, 239-40.]

On November 19, 2002, plaintiff protectively filed an application for Supplemental Security Income payments, alleging that she has been unable to work since February 1, 1997, due to high blood pressure, high cholesterol, leg and body pain, hand cramps, anxiety, paranoia, and depression. [AR at 55-58, 65.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on February 19, 2004, at which plaintiff appeared with counsel and testified on her own behalf. [AR at 235-59.] A vocational expert also testified. [AR at 259-60.] On March 19, 2004, the ALJ determined that plaintiff was not disabled because she did not have any physical or mental impairments that more than minimally limited her ability to perform work-related activities. [AR at 8-16.] The Appeals Council denied review on October 15, 2004, and the ALJ's decision because the final decision of the Commissioner. [AR at 3-5.]

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

2

Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-1041 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform

past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of her disability. [AR at 12.] At step two, the ALJ concluded that plaintiff had the following medically determinable impairments: hypertension, hypercholesterolemia, non-insulin-dependent diabetes mellitus, depressive disorder (not otherwise specified ("NOS")), and post-traumatic stress disorder (chronic, and in partial remission). [AR at 15.] The ALJ determined, however, that plaintiff did not have any impairment or combination of impairments that more than minimally limited her ability to perform basic work-related activities. [Id.] Accordingly, as plaintiff did not have a "severe" impairment, the ALJ concluded that plaintiff did not suffer from a "disability" as defined in the Social Security Act, and benefits were denied. [Id.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to appropriately consider the third party questionnaire completed by plaintiff's daughter on December 5, 2002. [Joint Stipulation ("Joint Stip.") at 3; see AR at 83-88.] In the questionnaire, the daughter gave the following example to demonstrate plaintiff's alleged memory and concentration difficulties: "We [i.e., plaintiff and her daughter] would talk on phone one day and [plaintiff] would not remember conversation the next day." Additionally, when asked if plaintiff had difficulty following instructions or completing tasks, the daughter stated: "[Plaintiff] would begin a chore and would have pain and shortness of breath, so [she] would not

4

finish. (Dishes: standing too long)."  [Joint Stip. at 3; AR at 87.]  The ALJ did not address the daughter's questionnaire.  Plaintiff contends that this omission was erroneous and warrants reversal or remand because the above statements had "significant implications for the ability to sustain work successfully."  [Joint Stip. at 3-4.]

For the reasons discussed below, the Court respectfully disagrees with plaintiff, and affirms the Commissioner's decision.

## A. LEGAL STANDARD REGARDING THE CONSIDERATION OF THIRD PARTY INFORMATION

As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), judges may, "in addition to evidence from the acceptable medical sources . . . also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [her] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d) (2005). Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering.... [T]his is particularly true of witnesses who view the claimant on a daily basis...").  An ALJ's consideration of lay testimony becomes especially important when a plaintiff alleges "that pain is a significant factor of his alleged inability to work and the allegation is not supported by objective medical evidence in the file." SSR[1] 88-13; see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so. Dodrill, 12 F.3d at 919.

---

[1]    Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

The ALJ, however, "does not need to meet the impossible burden of mentioning every piece of evidence" presented to him. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D. Ill. 1991). As long as substantial evidence supports the ALJ's conclusion and the ALJ explains why "significant probative evidence has been rejected," an ALJ's failure to discuss lay witness testimony constitutes harmless error. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984). In Vincent, although the ALJ did not discuss the plaintiff's son's testimony in his hearing decision, the court held that such an omission did not require reversal because the medical evidence supported the ALJ's decision that the plaintiff was not disabled. Id.

The view that an ALJ need not discuss every piece of evidence, even when that evidence is from a lay witness, has found support in the Seventh and Eighth Circuits, especially when lay witness testimony does little more than corroborate a plaintiff's own testimony. In Books v. Chater, a Seventh Circuit decision, the court  held that "[a]ll we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that [he] considered the important evidence...[and to enable] us to trace the path of the ALJ's reasoning.'" Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996) (quoting Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) (quoting Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985)). Since plaintiff's brother's testimony in Books "did not constitute a separate 'line of evidence,'" but "served strictly to reiterate, and thereby corroborate, [plaintiff's] own testimony concerning his activities and limitations" -- and the plaintiff's testimony was found by the ALJ to be "untenable" when contrasted with his daily activities and the medical evidence -- the court held that the ALJ's failure to specifically discuss the plaintiff's brother's testimony was not error. Books, 91 F.3d at 980.  Similarly, in Young v. Apfel, the Eighth Circuit held that "[a]lthough specific articulation of credibility findings is preferable, we consider the lack thereof to constitute a deficiency in opinion-writing that does not require reversal" as long as the ALJ's "ultimate finding is supported by substantial evidence in the record." Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). In Young, since the same evidence the ALJ used to discount the plaintiff's testimony "also support[ed] discounting the testimony of [the plaintiff's] husband," the court held that "the ALJ's failure to give specific reasons for disregarding [the husband's] testimony [was] inconsequential." Id.

6

**B.   MEDICAL EVIDENCE**

Any error by the ALJ in this case in not discussing plaintiff's daughter's third party questionnaire was harmless. As set forth below, substantial evidence supports the ALJ's conclusion that plaintiff does not suffer from a physical and/or mental impairment that more than minimally limits her performance of daily work activities, and the statements at issue in the questionnaire offer nothing probative to this determination.[2]

**1.   Physical Impairments**

In determining that plaintiff did not suffer from a severe physical impairment, the ALJ reviewed the reports of Dr. Concepcion Enriquez, the records from plaintiff's treating physician, Dr. Vivek Gill, and an assessment by the non-examining Disability Determination Services ("DDS") medical consultant. [AR at 12-13.] Dr. Enriquez conducted two consultative internal medicine evaluations of plaintiff, the first on January 16, 2003 [AR at 105-09], and the other on January 16, 2004. [AR at 221-25.] In the 2003 evaluation, plaintiff reported a history of hypercholesterolemia, high blood pressure, ulcers, chest pain, and leg pain. The examination results, however, showed that while plaintiff exhibited moderately elevated blood pressure,[3] she had normal range of motion in her spine and extremities, no physical abnormalities, and required no assistive device for ambulation. [AR at 106-08.] Dr. Enriquez concluded that plaintiff had no impairment-related physical limitations. [AR at 108.] Plaintiff's complaints in 2004 were substantially similar, only she now reported a history of back pain as well, and stated that she had been diagnosed with diabetes approximately six months prior, but had not been given medication. [AR at 221.] Dr. Enriquez noted that, with respect to her diabetes, her symptoms indicated that she was controlling the disease poorly. [AR at 224.] Similar to the previous year's results, plaintiff exhibited moderately elevated blood pressure, normal range of motion, no physical abnormalities, and no need for an

---

[2]   Plaintiff does not specifically challenge in the Joint Stipulation the ALJ's findings that her impairments are not severe and do not render her disabled. The only issue presented by plaintiff in the Joint Stipulation is the ALJ's failure to consider the third party questionnaire. The Court thus limits its discussion to this issue.

[3]   Plaintiff admitted that she had not taken her blood pressure medication that morning. [AR at 108.]

1   assistive device for ambulation (although plaintiff brought a cane to this examination). [AR at 222-

2   25.]  Dr. Enriquez again determined that plaintiff had no impairment-related physical limitations.

3   [AR at 108, 225.]

4        Progress notes covering the period May 21, 1998, to November 14, 2003, from plaintiff's

5   family physician, Dr. Vivek Gill, were also submitted as part of the record and considered by the

6   ALJ.  [AR at 126-65, 195-98.]  The notes in sum show that plaintiff: (1) exhibited "mild

7   hypertension" and had chest pains on March 23, 2001 [AR at 136]; (2) saw Dr. Gill on May 17,

8   2002, complaining of chest pains [AR at 135]; (3) told Dr. Gill on August 7, 2002, that she had

9   been out in the heat and had collapsed, losing consciousness for one to two minutes [AR at 133];

10  and (4) in October of 2002, was advised by Dr. Gill that she needed to be on medication to control

11  her severe blood pressure, and that left untreated she would experience "serious complications."

12  [AR at 131.]  There was also evidence of non-compliance with her medications.  [See AR at 142,

13  197.]  As the progress notes reflect that plaintiff primarily sought treatment for her hypertension

14  and chest pains, the ALJ properly concluded that the records from Dr. Gill "generally show[ed] no

15  objective abnormalities." [AR at 12.]  The ALJ also correctly observed that the progress notes do

16  not demonstrate any "evidence of hypertensive or diabetic complications or end organ damage."

17  [AR at 12.]

18       The ALJ did not accept the January 21, 2003, assessment from the non-examining DDS

19  medical consultant[4]  which restricted plaintiff to only taking part in medium work activities.   [AR

20  at 13, 192.]  As a basis for discrediting this restriction, the ALJ stated that the results were

21

22  _____

23       [4]    The results of this assessment determined that plaintiff: (1) can occasionally lift objects fifty
    pounds or more and frequently lift objects twenty-five pounds or more; (2) can stand and/or walk
24  for about 6 hours in an 8-hour workday; (3) can sit for about 6 hours in an 8-hour workday; (4) is
    not limited in pushing or pulling objects; (5) with respect to postural limitations, can frequently
25  stoop, kneel, crouch, or crawl, and can occasionally balance, but can never climb; (6) has no
    manipulative, visual, or communicative limitations; and (7) should avoid even moderate exposure
26  to hazards such as unprotected heights, dangerous machines, driving, and protected heights. [AR
    at 185-191.]  The examining doctor noted plaintiff's history of syncope, high blood pressure, and
27  diabetes, and determined that "[t]here is no evidence of end organ damage due to diabetes." [AR
    at 192.] The doctor found that plaintiff's conditions were supported by the medical evidence, but
28  the severity of her complaints was not. [AR at 192.]

inconsistent with Dr. Enriquez's internal medicine evaluations showing no impairment-related physical limitations and with Dr. Gill's progress notes showing no objective abnormalities or end organ damage.  [AR at 13.]

### 2.    Mental Impairments

With respect to the determination that plaintiff lacked a severe mental impairment, the ALJ considered the consultative psychiatric evaluations conducted by Dr. Laja Ibraheem and Dr. Louis Fontana, and two assessments performed by DDS psychiatric consultants.  [AR at 13-14.]  Dr. Ibraheem's examination, which took place on January 12, 2003, showed that plaintiff could do household chores and cook, as well as dress and bathe herself.  [AR at 100-04.]  Although plaintiff reported that she had problems concentrating and remembering things, her examination results demonstrated that her memory and concentration were intact, her insight and judgment were fair, and she was able to focus her attention adequately. [AR at 101-03.]  She had a prescription for Paxil, but admitted she was not compliant with the medication. [AR at 101.]  Dr. Ibraheem concluded that plaintiff had depressive disorder (NOS) and a Global Assessment of Functioning ("GAF") score of 60,[5] but was able to follow one- and two-part job instructions, and could adequately remember and complete both simple and complex tasks. [AR at 103-04.]  In Dr. Ibraheem's opinion, plaintiff was also able to manage her money, tolerate typical work environment stress, maintain regular attendance, work unsupervised, and interact with others in the workplace.  [AR at 104.]

Similarly, Dr. Fontana concluded in his January 19, 2004, evaluation of plaintiff that she was capable of managing her funds, performing both simple and complex tasks, accepting instructions from supervisors, interacting appropriately in the workplace, performing work activities on a consistent basis and without additional supervision, maintaining regular attendance, and

---

[5]    A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), p. 32 (4th Ed. 2000).  A GAF score from 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  See DSM-IV, at 34.

completing a normal workday/workweek.  [AR at 230-34.]  Dr. Fontana noted that, while plaintiff complained of a history of depression, decreased energy, and difficulty sleeping, she had never seen a therapist for mental health treatment.  [AR at 231.]  He gave plaintiff a GAF score of 65,[6] and diagnosed her with post-traumatic stress disorder (chronic, in partial remission), and depressive disorder (NOS).  [AR at 233.]

Based on these evaluations, the ALJ determined that plaintiff tested normally and was not prevented from working for psychological reasons. [AR at 14.]  The ALJ rejected, however, the GAF scores of 60 and 65 because he found them to be inconsistent with the test results.  [Id.] Instead, he gave weight to the DDS psychiatric consultants' assessments which were conducted on January 27, 2003, and May 20, 2003.  In the January evaluation, Dr. H. Amado diagnosed plaintiff with depressive syndrome (NOS), but determined that plaintiff's impairment was "non-severe by program standards," and found no restrictions on daily living activities, and no difficulties in maintaining social functioning or concentration.  [AR at 110-25.] The May 20, 2003, psychiatric review affirmed the "non-severe" decision of January 27, 2003.  [AR at 183.]  This subsequent assessment noted that plaintiff was able to cook, clean, shop and care for herself, and that "[h]er claims of memory and concentration problems were not evident at all on [the] exam."  [AR at 183.]

## C.   THE ALJ'S CONSIDERATION OF PLAINTIFF'S SUBJECTIVE COMPLAINTS WAS APPROPRIATE

At the hearing, plaintiff testified that she could not maintain employment due to constant leg pain, heart pain, cramps in her hands, high blood pressure, back pain, stomach aches from an ulcer, diabetes, arthritis, and fainting spells.  [AR at 240-44.]  She alleged that during an 8 hour period, she would need to lie down for four to five hours, and could only stand for 15 minutes at a time.  [AR at 250-51.]  She washes her own dishes, but could not vacuum or sweep.  [AR at

---

[6]   A GAF score from 61-70 indicates mild symptoms or some difficulty in social, occupational, or school functioning.  An individual scoring in this range would generally function "pretty well" and have some meaningful interpersonal relationships.  See DSM-IV, at 34.

252.]  She also could not lift anything more than eight pounds, and had difficulty sleeping due to leg pain. [AR at 253, 258.]

Accordingly to the ALJ, plaintiff's allegations of pain, hand cramps, and fainting spells were not based on any medically determinable impairments. [AR at 13.] In addition, her subjective complaints were not fully credible as they were out of proportion to the objective findings of the physical and mental evaluations.  [AR at 14.]   In giving weight to Dr. Enriquez's findings and opinion, Dr. Gill's progress notes, Dr. Ibraheem's and Dr. Fontana's evaluations, as well as the psychiatric consultants' assessments, the ALJ concluded that plaintiff had no severe physical or mental impairments.  The medical evidence supports this determination.  In particular, the physical medical evaluations consistently demonstrate that plaintiff had no end organ damage or other objective abnormalities that would prevent her from maintaining employment.  The mental health evaluations similarly show that plaintiff suffered from no impairment that would substantially affect her ability to operate in the workplace.  Moreover, the ALJ sufficiently explained the reasons for his rejection of the GAF scores and the "medium work activity" restriction.

Because the ALJ's disbelief of plaintiff's subjective complaints was a critical factor in the decision to deny benefits, the reasons discounting her subjective complaints must be supported by explicit findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (implicit finding that claimant was not credible is insufficient); see also Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a plaintiff's testimony as to severity of symptoms when there is medical evidence of an underlying impairment).  Indicia of unreliability upon which an ALJ may rely to reject plaintiff's subjective complaints include: (a) activities inconsistent with a finding of a severe impairment; (b) discrepancies in plaintiff's statements; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment.  See Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989) ("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working.").  If properly

1  supported, the ALJ's credibility determination is entitled to "great deference."  Green v. Heckler,

2  803 F.2d 528, 532 (9th Cir. 1986).

3      Here, the ALJ's credibility determination is owed deference because it is based upon

4  specific and appropriate findings.   It was reasonable to determine that plaintiff was exaggerating

5  her symptoms as the objective medical evidence did not support the level of inactivity that she

6  claimed.  Specifically, the ALJ found no evidence of disuse muscle atrophy that would require her

7  to lie down for four to five hours in an eight hour period.  See Rollins v. Massanari, 261 F.3d 853,

8  857 (9th Cir. 2001) (while medical evidence alone cannot discredit testimony as to pain, it is one

9  factor which the ALJ is permitted to consider).  The ALJ also noted that Dr. Ibraheem's psychiatric

10  report, which stated that plaintiff could do various household chores and cook, reflected that she

11  could function at a higher activity level than alleged at the hearing.  See 20 C.F.R. §§ 404.1529,

12  416.929 (permitting the evaluation of, among other things, inconsistencies in the evidence, and

13  conflicts between a claimant's statements and the rest of the evidence, to determine the extent

14  to which symptoms affect capacity to work).

15      The ALJ further stated, "if [plaintiff] were experiencing the disabling problems alleged, she

16  would have received more aggressive treatment, she would be fully compliant with medications

17  and she would seek mental health treatment."  [AR at 15.]  This determination was reasonable,

18  for plaintiff's subjective complaints were not consistent with her treatment, or lack thereof -- she

19  sought no mental health treatment despite her allegations of depression, and there is no evidence

20  that she ever requested or was advised to see a specialist for her pain despite her routine office

21  medical visits.  Additionally, at the hearing, plaintiff testified that she was advised to seek treatment

22  regarding her infrequent fainting spells, but never did so.  [AR at 246.]  Although plaintiff appeared

23  to control her conditions with medication, the evidence demonstrates that she was not always

24  compliant.  With respect to her diabetes diagnosis, she was never even prescribed medication to

25  combat the disease.  See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cr. 1995) (conservative

26  medical treatment could suggest lower level of pain and functional limitation).

27      Accordingly, the ALJ's conclusion that plaintiff's testimony was not "fully credible" was

28  sufficiently supported and will not be disturbed.

**D.      THE THIRD PARTY QUESTIONNAIRE WAS NOT PROBATIVE**

The ALJ's decision denying plaintiff benefits is based on a reasonable interpretation of the evidence, and is amply supported by the record. The failure to discuss plaintiff's daughter's third party questionnaire therefore constitutes harmless error because the information the daughter provided was not probative to the ALJ's determination.  Rather, the daughter's statements only serve to corroborate plaintiff's statements, and they are inconsistent with the medical evidence.  See 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 88-13; Books, 91 F.3d at 980; Vincent, 739 F.2d at 1395.  For example, the daughter's comment that she would talk on the phone with plaintiff, and the next day plaintiff would not remember the conversation, is in line with plaintiff's complaint to Dr. Ibraheem that she suffered from memory and concentration problems.  Yet, plaintiff's examination results showed that her memory and concentration abilities were intact.  [AR at 103.]  Additionally, the May 20, 2003, evaluation stated that plaintiff's alleged memory problems were "not evident at all."  [AR at 183.]  Both Dr. Ibraheem and Dr. Fontana concluded that plaintiff had the mental capacity to maintain employment, interact with others, and tolerate the workplace environment -- findings that soundly demonstrate plaintiff did not suffer from severe memory problems that would prevent her from having a job.  Because the medical evidence supports the ALJ's decision that plaintiff did not suffer from a severe mental impairment, the fact that the ALJ did not discuss the questionnaire does not require reversal or remand.  See Vincent, 739 F.2d at 1395.

Next, the daughter's statement that "[plaintiff] would begin a chore and would have pain and shortness of breath, so [she] would not finish" only corroborates plaintiff's testimony that she experienced pain in her legs and had an extremely low activity level.  As discussed previously, this information is inconsistent with the objective medical evidence showing no disuse muscle atrophy or objective abnormalities.  Moreover, the other evidence the ALJ used to discredit plaintiff's subjective complaints (i.e., lack of physical therapy and/or specialist treatment for the pain) also supports the rejection of this statement.  See Young, 221 F.3d at 1068.

Thus, the ALJ's failure to expressly discuss the daughter's third party questionnaire was inconsequential and had no effect on the final determination that plaintiff was not disabled.

**VI.**

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.


DATED: October 11, 2005                                    /S/
                                                  PAUL L. ABRAMS
                                    UNITED STATES MAGISTRATE JUDGE